### CHARLES N. WORMSTEAD *vs.* CITY OF LYNN.

Essex.   November 5, 1903. — November 25, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, LORING, & BRALEY, JJ.

*Municipal Corporations.*

An order from the proper authorities to widen a public way, making it the duty of a city or town to perform the work of construction, gives no authority to the surveyor of highways or any municipal officer to perform the work or to make any contract for its performance without a vote of the city or town.

In order that a practice or custom adopted by a town or city should give authority to an officer to make contracts in its behalf, the adoption of the practice or custom must have been by a vote of the town or city.

Where a person enters into a contract with a public officer, who undertakes to act for and to bind a municipal corporation, he is bound at his peril to ascertain the extent of the authority of the public officer with whom he deals.

CONTRACT against the city of Lynn, for alleged breach of contract, with one count for loss of profits, and another for expenses incurred.   Writ dated November 5, 1900.

At the trial in the Superior Court *Wait*, J. ruled that the plaintiff was not entitled to recover, and ordered a verdict for the defendant.   He reported the case for determination by this court.   If the city of Lynn could be bound by a custom or practice of the superintendent of streets to make contracts for the city in excess of the authority conferred upon him by statute and by the ordinances of the city, there was to be a new trial; otherwise the verdict was to stand.

*J. A. O'Keefe*, for the plaintiff.

*S. Parsons & H. A. Bowen*, for the defendant.

LORING, J.   This is an action for damages for breach of a contract in which the plaintiff's claim was that the defendant city agreed to pay him for riprapping an embankment as part of the work necessary to carry into effect an order for widening

a public way within the city limits. The breach relied on was a refusal on the part of the defendant to allow the plaintiff to do any work at all under the alleged contract. The defence set up was that it never entered into any contract with the plaintiff.

Where a public way is widened by the public authorities, it becomes the duty of the city or town in which it is situated to perform the work of construction. But the order for widening does not without more enable the surveyor of highways or any officer of the city or town (as the case may be) to perform the work on behalf of the municipality in question, or to enter into a contract on its behalf to have it performed. The city or town must by vote contract for the work or authorize some one else to do so in its behalf. *Bean* v. *Hyde Park*, 143 Mass. 245.

It is not pretended that any such vote was passed by the city of Lynn in the case at bar. The plaintiff however relies on this: He proved that one Tarbox, who was superintendent of streets of the defendant city and who as such had the duties and powers of a surveyor of highways, made with the plaintiff by word of mouth the contract sued on, with the approval, but not by vote, of the mayor and one member of the committee of the board of aldermen on streets. The committee on streets consisted of the mayor and two aldermen. The plaintiff also proved that the city engineer came to the location of the work and gave him the lines to be followed. He then offered to prove by Tarbox, (the present superintendent of streets of the defendant city,) by one Bates, (a former superintendent of streets of the defendant,) by one Ramsdell, (a former mayor,) and one Sampson, (a former alderman of the city,) "that the superintendent of streets for the city of Lynn for the past eleven years had been in the habit of letting contracts for amounts in excess of $10.00 for blasting and other similar work without authority from the committee on streets or the city council." The plaintiff also "offered to prove, if competent, that he had previously had a contract amounting to more than $10.00 with the city of Lynn to widen a portion of Walnut Street in said Lynn, and that he had completed said contract and received his pay." The plaintiff's contention is that a city or town, by a practice or custom adopted by it, may authorize one of its officers to make contracts in its behalf, or at any rate that it may by such a practice or cus-

tom hold him out as having such authority, and be estopped to deny that he had such authority in case a person acts on the faith of such holding out; and he relies on what was said in *Blanchard* v. *Ayer*, 148 Mass. 174, 178, in support of this contention.

It is not necessary to go at length into the powers of a surveyor of highways in making repairs. Speaking generally, he has no power to bind the city or town unless the repairs are unprovided for, and then only if in entering into the contract he pursues the statutory requirements. *Blanchard* v. *Ayer*, 148 Mass. 174. The statutory requirements in question in *Blanchard* v. *Ayer* were changed by the effect of St. 1895, c. 374, § 1. See notes by commissioners on Revised Laws, c. 51, and R. L. c. 51, § 6.

As we have said, no one has authority to enter into a contract for the construction of a way which it has become the duty of a city or town to construct, until a vote of the city or town has been passed authorizing him so to do expressly or impliedly.

The plaintiff misapprehends what was meant by W. Allen, J. in *Blanchard* v. *Ayer*, 148 Mass. 174, 178, when he said that a town may authorize the surveyors to make contracts not within the statute "by express vote, or by a practice and custom adopted by the town." What was meant by "a practice and custom adopted by the town" is explained by what is said in the next paragraph of the opinion beginning with the words "If, for instance," and putting a case where a town by vote adopts a rule "that all bills for labor and materials in repairing the ways should be paid by the town treasurer, on the order of a highway surveyor approved by the selectmen, there can be no doubt that a person performing labor at the request of a surveyor, and having the proper order upon the treasurer for payment therefor, would have a right of action against the town. Authority by the town to make the contract for labor would be implied."

In the case at bar there was no evidence of authority given by practice or custom impliedly adopted by a vote of the city government of Lynn.

The other contention of the plaintiff is that the defendant city has held out the superintendent of streets as one having authority to contract, and is estopped to deny that authority as against

the plaintiff who has acted on the faith of the practice which the city has allowed.

We do not stop to point out that the plaintiff's offer of proof might well be taken to be confined to letting contracts for the repair and not to extend to a contract for the construction of public ways. For the decisive answer to the whole contention is that the doctrine relied on by him has no application where a person enters into a contract with a public officer who undertakes to act for and to bind a municipal corporation or other body politic. Such a person is bound at his peril to ascertain the extent of the authority of the public officer with whom he deals. In such a case the money pledged for the payment of the contractor is the money of the public or of an ascertained portion of the public, and the public is not estopped by a violation of duty on the part of public officials, no matter how many officials may have been concerned in it, and no matter how long it may have continued. See in this connection *Abbott* v. *North Andover*, 145 Mass. 484, 486. To bind the public the body must act which by law can bind them. The rule has been enforced in cases where parties have undertaken to make out a ratification by use of a public structure constructed without authority. In *Keyes* v. *Westford*, 17 Pick. 273, a better road was built than was provided in the lay out by the county commissioners under a vote of the town authorizing the construction of the road as laid out. It was argued that as " the town have the benefit of it," it was bound to pay for the better road. See p. 279. It was held that the fact that the town never had voted for the better road was decisive of that argument. In the subsequent case of *Hayward* v. *North Bridgewater School District*, 2 Cush. 419, the fact that a school was kept in a schoolhouse built without authority, and that this was done by vote of the prudential committee of the school district, did not make the district liable because that committee had no authority to contract for the erection of a schoolhouse for the district. To the same effect see *Boston Electric Co.* v. *Cambridge*, 163 Mass. 64; and see *Delafield* v. *State*, 2 Hill, (N. Y.) 159; *Marsh* v. *Fulton County*, 10 Wall. 676.

The entry must be

*Judgment on the verdict.*